FILED
2017 JAN 23 AM 8:42
CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTEN REITER,

    Plaintiff,

v.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.

_____/

Case # 8:17-cv-157-T-24 MAP

## COMPLAINT

The Plaintiff, KRISTEN REITER (REITER), sues the Defendant, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY (LINCOLN) and states:

### Jurisdiction and Venue

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. § 1132.

3. LINCOLN is an insurance company headquartered in Indiana, licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4. REITER is a resident of Lithia, Florida.

5. Venue is proper.


TPA-041394

## Governing Plan

6.   REITER is and/or was a participant in each of the plans, funds, programs, or arrangements described herein, or in the alternative, was at all times relevant a participant in each of the plans, funds, programs, or arrangements described herein.

7.   REITER is a former employee of Florida Hospital, an entity owned by Adventist Health System Sunbelt Healthcare Corporation (Adventist), a business headquartered in Altamonte Springs, Florida, doing business in Hillsborough County, Florida.

8.   At all relevant times, REITER was a participant in an employee benefit plan (hereafter referred to as "the Plan"), sponsored by Adventist.

9.   Adventist funded its Plan by purchasing a group policy of insurance (Group # GL 0004000003002-00784) issued by LINCOLN. A copy is attached hereto Exhibit "A" and is incorporated by reference.

## The Long Term Disability Claim

10.   REITER worked as a registered nurse at Florida Hospital.

11.   REITER made a claim for Long Term Disability benefits under the Plan after she was forced to stop working due to complex regional pain syndrome, causing pain and diffuse swelling from her neck to her fingertips, which made it such that she could not continue working in her own occupation.

12.   REITER made a claim for Long Term Disability benefits in September 2013.

13.   LINCOLN paid her claim for over two years then terminated payment of her benefits on April 17, 2016.

14. REITER timely appealed on October 3, 2016.

15. In REITER's appeal she informed LINCOLN she was trying to obtain additional information and requested an extension until October 21, 2016 to provide that information.

16. REITER submitted a Functional Capacity Evaluation to LINCOLN on October 21, 2016, and informed LINCOLN to begin processing the appeal.

17. REITER's letter dated October 21, 2016, specifically stated that "[a]pplicable timelines pursuant to 29 C.F.R. § 2560.503-1 beg[a]n with receipt of [that] letter."

### LINCOLN's failure to make a decision is deemed denied.

18. Upon initiation of a Long Term Disability claim, a claims administrator has 45 days with which to make a determination. 29 C.F.R. § 2560-503.1(i)(3). This period of time "shall begin at the time an appeal is filed . . . without regard to whether all the information necessary to make the benefit determination on review accompanies the filing" 29 C.F.R. § 2560-503.1(i)(4)).

19. A claims administrator may extend the period for up to 45 days, and in no event shall the extension exceed a period of 45 days. 29 C.F.R. § 2560.503-1(i)(1)(i); 29 C.F.R. § 2560.503-1(i)(3).

20. Based upon the date the appeal package was sent, October 3, 2016, the 45th day to either decide her claim or request an extension was November 17, 2016. Using the October 21, 2016 extension date, the 45th day was December 5, 2016.

21. On November 14, 2016, LINCOLN informed REITER that it would need to take the 45-day extension because it "ha[d] not yet reached a determination."

22. The 45-day extension from the initial appeal package required a decision by January 1, 2017. LINCOLN's letter that requested the extension confirmed REITER "can expect to receive a decision from us by 1/1/2017."

23. Using the October 21, 2016 submission of the Functional Capacity Evaluation, the 45-day extension required a decision by January 19, 2017.

24. On December 15, 2016, LINCOLN requested and scheduled REITER to attend a compulsory medical examination nearly four weeks later on January 11, 2017, which she willingly attended.

25. On December 30, 2016, LINCOLN wrote REITER a letter stating it needed another extension.

26. On January 6, 2017, REITER wrote LINCOLN and explained even under the most liberal construction of the deadlines provided by 29 C.F.R. § 2560-503.1, i.e. utilizing the October 21, 2016 date, the decision was due at the latest by January 19, 2017.

27. As of the date of filing this Complaint, January 20, 2017, LINCOLN still had not reached a decision on REITER's claim in violation of the Regulations.

28. REITER's claim has been deemed denied by LINCOLN's failure to make a decision within the regulations outlined by 29 C.F.R. § 2560-503-1.

29. Under 29 C.F.R. § 2560.503-1(l), when LINCOLN does not follow the regulated deadlines, REITER's claim is deemed to have exhausted all administrative remedies.

30. REITER is prejudiced by LINCOLN's failure to make a timely decision.

31. De novo review applies to this action by virtue of LINCOLN's violation of 29 C.F.R § 2560.503-1.

**Standard of Review Unrelated to Failure to Make a Timely Claim Decision**

32. The group policy was drafted in its entirety by LINCOLN.

33. The group policy is a contract of adhesion.

34. LINCOLN and Adventist use the group insurance policy (Exhibit A) as both the Plan document and policy language.

35. No other plan documents exist other than the group insurance policy (Exhibit A).

36. No originating plan document exists which instituted the Adventist disability plan.

37. No originating plan document or other document exists in which Adventist reserved any discretionary authority to itself in relation to the Adventist disability plan.

38. The employees or agents of Adventist and LINCOLN did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from Adventist to LINCOLN before purchasing the group insurance policy to fund its disability plan.

39. At the inception of its disability plan, Adventist did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

40. At the time it purchased the group disability insurance policy from LINCOLN, Adventist did not have any discretionary authority which it could delegate to an insurance company.

41. The group disability insurance policy was drafted entirely by LINCOLN.

42. No document prepared by Adventist delegates any discretionary authority to LINCOLN.

43. There is no mention of any delegation of discretion within the four corners of the Long Term Disability insurance policy.

44. LINCOLN was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because or one or more of the following:

    a) Adventist never had the authority to delegate discretion to LINCOLN following the inception of its disability plan;

    b) Discretionary authority is a material concept that Adventist never discussed with LINCOLN;

    c) The group insurance policy is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

    d) If it had power to delegate discretion, Adventist did not properly delegate discretionary authority over claims decisions to LINCOLN; or

45. De novo review applies to this action.

46. To the extent that this court determines that de novo review does not apply to this action, LINCOLN pays claims from its own general assets as the claims decision maker and funder of the group insurance policy and LINCOLN operates under a conflict of interest.

47. LINCOLN is the Plan's claims administrator, handling claims under the insurance policy.

48. Any claims paid under the group insurance policy, are paid by LINCOLN entirely from LINCOLN's assets.

49. No assets of Adventist are used to pay claims under the group insurance policy.

50. REITER is entitled to benefits under the Plan consisting for Long Term Disability since the date of termination, April 17, 2016, through the date of filing this action, as she has met the definition of disability based upon restrictions and limitations related to his impairments.

51. Benefits under the group disability insurance policy are calculated at a rate of 60% of REITER'S gross basic monthly earnings.

52. REITER earned $4,593.33 monthly, yielding a gross monthly benefit payment of $2,756.

53. As of the date of filing this action, LINCOLN owes REITER a total of 9 monthly benefit payments at the rate of $2,756, an aggregate sum of $24,804.

54. Plaintiff is entitled to benefits herein because:

    (a) The benefits are permitted under the Plan.

    (b) Plaintiff has satisfied all conditions to be eligible to receive the benefits.

    (c) Plaintiff has not waived or otherwise relinquished entitlement to the benefit.

55. Each monthly benefit payment owed since April 17, 2016 is a liquidated sum, and became liquidated on the date the payment was due and payable. Plaintiff seeks pre-judgment interest on each such payment.

56. Pursuant to ERISA § 502(g), 29 U.S.C. §1132(g), REITER is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

**WHEREFORE**, the Plaintiff, KRISTEN REITER, asks this Court to enter judgment against the Defendant, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, finding that:

(a) The Plaintiff is entitled to Long Term Disability benefits from April 17, 2015 through the filing of this lawsuit; and

(b) Awarding benefits in the amount not paid to the Plaintiff from April 17, 2015 to the date of filing this lawsuit - a total of $24,804, together with pre-judgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid, and declare entitlement to any additional benefits owed to Plaintiff from the time of filing this Complaint to the time of Judgment in this action; and

(c) Award reasonable attorney fees and costs incurred in this action; and

(d) For such other and further relief as this Court deems just and proper, including but not limited to:

> 1. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

2. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

3. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

DATED this 20th day of January, 2017.

JOHN V. TUCKER, ESQUIRE
Florida Bar # 899917
tucker@tuckerludin.com
AMY RAY, ESQUIRE
Florida Bar # 115793
ray@tuckerludin.com
Attorneys and Trial Counsel for Plaintiff
TUCKER & LUDIN, P.A.
5235 16th Street North
St. Petersburg, Florida 33703
Tel.: (727) 572-5000
Fax: (727) 571-1415